## Case No. 17,888.

### WINSOR v. SAMPSON et al.

[1 Spr. 548.] ¹

District Court, D. Massachusetts. April Term, 1853.

TRUSTEES OF VESSEL — LIABILITY FOR MASTER'S WAGES—SET-OFFS.

1. Trustees holding the title of a vessel, and controlling and managing her, for the benefit of others, are liable for the wages of the master.

2. Charges by the owners, against the master, for passage of his minor son,—for freight of a piano forte,—for board-bill paid for him,—passage of his servant,—for regulating a chronometer,—and for use of extra state rooms, considered and decided upon.

This was a libel by the master of the ship Rockland against the owners, to enforce payment of $1761.42 wages, on a voyage round the globe, from New York to San Francisco, and Calcutta, and back to Boston. The defence was, that the respondents, Messrs. Sampson and Tappan, were not owners of the vessel, and not liable to Captain Winsor for wages; and secondly, if liable, they claimed a set-off of $1254.71, for various items specifically considered in the opinion of the judge.

R. H. Dana, Jr., for libellant.

William Dehon, for respondents.

SPRAGUE, District Judge. The first question is, whether the respondents are liable at all for wages. They say, in their answer, that they were not owners, and made no contract with the libellant. It appears that the register and bill of sale were in their names, as sole owners; but they say that they held merely as trustees, and an indenture of trust between them and one Horace B. Tebbets, of New York, has been produced. From this it appears that they were to hold the legal title and the possession of the vessel, to appoint the master, to collect the freight at all the ports, to determine the employment of the vessel, and at the end of the voyage, to sell the vessel, and after paying all expenses, to divide the net profits of the voyage, including the price obtained for the vessel, with said Tebbets and one Ward, giving one half to Tebbets and one quarter to Ward, and retaining the balance themselves. In pursuance of this indenture, they appointed Captain Winsor, gave him his instructions, from time to time, and it was to them he rendered his accounts at the end of the voyage. As mere trustees in possession, they would in law be liable for wages, unless the master agreed to exempt them, and looked to others. It is alleged in the answer, that he contracted with, and relied upon Tebbets, but the evidence is otherwise. Further, the respondents were not mere trustees. They had an interest

¹ [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

in the vessel, and were trustees for themselves as well as Tebbets. On every principle, then, they must be held liable for the wages.

The remaining question is upon the claims against the master, which they present by way of set-off. They are six in number:

1st. A charge of $475 for the passage of the captain's son. The captain had leave to take his wife with him, and this was a boy about five years old, who went with his mother. The libellant says it was verbally agreed that the boy should go with his parents, and he has interrogated the respondents on this point, under oath. They deny all knowledge of the boy's going in the vessel, and their answer is evidence, and the only direct evidence. No knowledge of his going is traced to the respondents. In this state of the evidence, the master must pay for his son's passage, and it appears that $300 would be a proper charge.

2d. The next charge is $100 for freight of a piano, from New York to San Francisco. This piano belonged to Mrs. Winsor, was placed in the cabin, kept open, and used by Mrs. Winsor, and other ladies who were passengers. The evidence shows that it was taken as an article of furniture, and for use and amusement, and was not an incumbrance, but conducive to the pleasure of the passengers. This item, therefore, is disallowed.

3d. A deduction of $118.12 is claimed on the libellant's board bill, while at Singapore. The master's answer says that he was boarded at the lowest rate, and the bill was paid by the respondent's agent there, apparently without objection, and no evidence is offered to prove that the amount paid was unreasonable. This claim, therefore, is not allowed.

4th. The respondents charge $125 for the passage of a servant to the master, from Singapore to Boston. The evidence shows that this man was an assistant steward, signed the articles, and was paid by the owners; also that it was necessary to have such a person on a ship of this size, having three cabins, and that he did steward's duty, and did not attend more on the captain and his family, than on the other passengers. This item is disallowed.

5th. The next item is a charge of $34 for regulating the captain's chronometer at San Francisco, Singapore and Calcutta. It seems there were two chronometers on board, one belonging to the ship, and the other to the captain, and they were both regulated together. There is no evidence of the usage in such cases, and in the absence of a settled usage to the contrary, I think it reasonable that the expense of rating and regulating the captain's chronometer, where he used it for the benefit of the ship, solely, should be borne by the ship.

6th. The last item is a charge of $300 for the use of three extra state-rooms, on the

passage from Calcutta. There was but one passenger, beside the captain's family, and the state-rooms in the three cabins were nearly all of them unoccupied, except by a few articles of ship's stores. The captain put several articles of his own in these rooms, with the ship's stores, but all his articles could have been stored in one room, if necessary, and were only distributed for convenience, and were not unreasonable in quantity. If there were reason to suppose that he used these rooms so as to displace freight or stores, he should be held answerable; but the evidence of both the supercargo and the mate shows, that there was no use for these rooms. It would be extremely unreasonable to charge him for them.

I shall allow the whole amount in the libel, less $300 for the son's passage. Decree for the libellant, for $1461.42, and costs.